## Case No. 18,000.

### In re WOODWARD.

[8 Ben. 112; 12 N. B. R. 297; 1 N. Y. Wkly. Dig. 33; 7 Chi. Leg. News, 387.] [1]

District Court, E. D. New York. May, 1875.

REGISTER IN BANKRUPTCY—SUMMONS OF WITNESS.

A summons to a witness to attend before a register in bankruptcy may be served outside the district but within 100 miles of the place where the witness is required to attend.

[Proceedings in the matter of William S. Woodward, a bankrupt.]

---

## Case No. 18,001.

### In re WOODWARD.

[8 Ben. 563.] [1]

District Court, E. D. New York. Nov., 1876.

OPPOSITION TO DISCHARGE—SPECULATOR IN STOCKS NOT A MERCHANT—CONCEALMENT OF PROPERTY—ADMISSION OF FICTITIOUS DEBTS.

1. W., a speculator in stocks who failed for a large sum and went into bankruptcy, applied for his discharge. It was opposed on the grounds, that he was a merchant or tradesman and had not kept proper books of account; that he had concealed property—a horse and wagon—belonging to him at the time of filing his petition; and that he had admitted fictitious debts in making up his schedules and had falsely sworn thereto. Held, that a speculator in stocks is not a merchant or tradesman within the meaning of the statute.

[Quoted in Ex parte Conant, 77 Me. 278.]

2. As the only proof of concealment of property was a statement made by the bankrupt two years after filing his petition in these words: "I now have a horse and wagon," the court would not hold, in a case involving millions of dollars, that it was meant that he owned the property

---

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission. 1 N. Y. Wkly. Dig. 33, contains only a partial report.]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

at the time of filing his petition, and that he had therefore concealed it.

3. As the debts alleged to be fictitious, while stated in the schedules and upon the books of the bankrupt, arose out of transactions in stocks, for the statement of many of which the bankrupt relied entirely upon his brokers and could himself furnish no information, it could not be said that such want of recollection, or even slight inaccuracies shown, warranted the belief that the bankrupt had wilfully sworn falsely or made false entries. A discharge must be granted.

[Proceedings in the matter of William S. Woodward, a bankrupt. For prior proceedings, see Case No. 18,000.]

BENEDICT, District Judge. This proceeding comes before the court upon an application for a discharge. The application is opposed by creditors upon various grounds set forth in several specifications. The principal question presented to me for my decision is whether the occupation of the bankrupt was that of a merchant or tradesman within the meaning of the bankrupt law [of 1867 (14 Stat. 517)]. If he was a merchant or tradesman a discharge must be refused, as it is conceded that he kept no proper books of account.

The evidence shows that the bankrupt was a speculator in stocks and had no other occupation. His contracts in respect to stocks were often made in his own name and often by brokers upon his order and for his benefit. His dealings in stocks were large and frequent, and he thereby acquired a credit which enabled him to make contracts in stocks to an enormous amount. The number of his creditors according to his schedule is 178; the amount of his debts $2,894,684.71. Of the 138 creditors who have proved claims amounting to $2.201.167.07, ninety-one whose debts amount to $1,345,991.76, have consented to his discharge. It is also insisted that the evidence shows that the bankrupt kept an office, and that he transacted the business of a broker in stocks. He was a member of the board of brokers. Upon these facts the court has been urged to hold that the bankrupt was a merchant or tradesman, and to refuse the discharge, because of his failure to keep proper books of account. But my opinion is that the bankrupt can not be held to have been a merchant or tradesman within the meaning of the bankrupt law. The words merchant and tradesman involve the idea of a dealing with merchandise in some form or other. In their ordinary and natural signification they do not include one who makes profits by buying and selling of shares on speculation, whether for himself or for others. Such a person would not in ordinary parlance be said to be engaged in trade. No case has been cited which furnishes authority for extending the meaning of these words, so as to include the occupation of this bankrupt. The adjudged cases look the other way. The Case of Marston [Case No. 9,142] is quite in point. It is supposed that the

present case differs from the Case of Marston in that the dealings of this bankrupt were not casual, that he had an office, made contracts in his own name as well as for others, and acquired by his dealings a credit that enabled him to make extensive purchases of stocks. But these circumstances, assuming them to be proved, do not bring him within the statute, for they do not disclose the characteristic feature of the occupation of a merchant or tradesman, namely, a trading in goods, wares or merchandise. I am therefore of the opinion that the discharge of this bankrupt cannot be refused upon the ground that he kept no proper books of account.

A further ground of objection to the discharge is the omission from the bankrupt's schedules of claims against various parties named in the specifications, arising out of certain written agreements made in May and June, 1871, in relation to purchasing 60,000 shares of Chicago, Rock Island and Pacific Railroad stock, forming what is called a "pool."

In regard to this objection it is sufficient for the present case to say that the evidence fails to prove that there was any profit made, or that any claim arising out of those agreements exists, to be stated by the bankrupt in his schedules. It is in proof that the bankrupt made large contracts in Chicago, Rock Island and Pacific Railroad stock, in addition to the 60,000 shares, purchased by the agreement of the "pool," on which additional contract there was a large loss; and an effort has been made to show that these additional purchases were in fact made for the benefit of the parties to the pool agreement, so as to render these parties liable to share in the losses upon such additional purchases. But such a conclusion cannot properly be drawn from the evidence presented in this case. All the direct testimony is opposed to such a conclusion; and the circumstances, relied upon as conflicting with the direct testimony, are not sufficient to justify holding that the bankrupt has wilfully sworn falsely in his affidavit annexed to his petition, or has concealed claims of this character outstanding against parties who were interested with him in such additional contracts.

A remaining objection to the discharge is that the bankrupt omitted to mention in his schedules a horse and wagon, that it is contended the evidence shows him to have possessed. This objection is taken in a specification filed by consent of the bankrupt after the testimony had been closed, and rests entirely upon the testimony given by the bankrupt on his examination.

The objection that property has been concealed by a bankrupt, whenever it is made, is entitled to careful consideration, and the validity of such an objection is not affected by the value of the property alleged to have been concealed. Still, in a case like the present, instituted by the bankrupt for the purpose of obtaining a discharge from debts

amounting to some millions of dollars, the objection that the bankrupt has concealed a horse and wagon,· and wilfully sworn falsely in his affidavit attached to his schedules because of the omission of a horse and wagon therefrom may well be held to require explicit proof. The advantage to be gained by such an omission is too slight to render its existence at all probable. It is but just, therefore, to take the statement made by the bankrupt in respect to the horse and wagon as he makes it All that he says—and there is no other evidence—is "I now have one horse and wagon." This statement was made nearly two years after the filing of the petition and does not show that the bankrupt had the horse and wagon when he made his schedules and affidavit. It was open to the creditors to examine fully as to the horse and wagon; and, having failed to elicit any other fact than that the bankrupt had a horse and wagon some two years after he filed his petition, they have no ground on which to contend that the bankrupt has concealed any part of the estate possessed by him at the time of filing his petition.

The observations already made dispose of all the specifications that the evidence requires should be noticed, unless it be the additional propositions numbered 4 and 5. In specifications 4 and 5, the charge is that the bankrupt has falsified his books and made false and fraudulent entries therein with intent to defraud his creditors, in this, that certain persons are named as creditors when in fact they were not indebted to him, and that certain debts set forth as due by the bankrupt had no existence in fact. The main support of these specifications is the fact that with regard to some considerable debts mentioned in the schedules and stated in his books, the bankrupt is unable to give any information as to the transaction out of which the indebtedness arose. In one or two instances it seems that a debt mentioned as the debt of one person was in fact owing to another. But when the nature of the bankrupt's transactions is considered, and the method of conducting these transactions between brokers acting for principals at the time undisclosed, and when it is remembered that the most of the bankrupt's indebtedness, amounting to some ·millions, arose in the space of four days out of a gigantic speculation in stocks, conducted through various brokers, and of which in very many cases the bankrupt kept no memorandum, but relied upon the brokers' statements sent to him and which were subsequently collected and arranged in books, it will be deemed no strained conclusion to say that mere want of recollection on the part of the bankrupt of some of these transactions, and the few inaccuracies which have been disclosed in the accounts so made up, do not prove that the bankrupt has wilfully sworn falsely in his affidavit or has admitted false and fictitious debts against his estate.

I have now considered all of the specifications that appear to require consideration, and, finding none of the specifications to be supported by evidence, it is my duty to grant the application of the bankrupt for a discharge.